| | |
|---|---|
| DAVID A. BADHWA and<br>DENISE A. BADHWA, | CIVIL NO. 18-2258 (PJS/DTS) |
| Plaintiffs, | |
| v. | |
| VERITEC, INC., | **REPORT AND RECOMMENDATION** |
| Defendant, | |
| and | |
| VERITEC, INC., | |
| Counter-Plaintiff and<br>Third-Party Plaintiff, | |
| v. | |
| DAVID A. BADHWA and<br>DENISE A. BADHWA, | |
| Counter-Defendants, | |
| and | |
| ACESSE CORPORATION,<br>ADXNET, INC.,<br>ADX LABS, LLC,<br>A2Z HOLDINGS, INC.,<br>MOBILESOFT TECHNOLOGY, INC.,<br>JAB COMPANIES,<br>STEVEN M. RENNER,<br>JOSEPH MORRIS,<br>MOBILE.NET LLC, | |
| Third-Party Defendants. | |

Joseph J. Cassioppi, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, for David A. Badhwa, Denise A. Badhwa, and JAB Companies, Inc.

Troy J. Hutchinson, Rock Hutchinson, PLLP, 120 South Sixth Street, Suite 2050, Minneapolis, Minnesota 55402, for Veritec, Inc.

Loren L. Hansen, Marnie E. Fearon, and Molly Littman, Gray Plant Mooty, 80 South Eighth Street, IDS Center Suite 500, Minneapolis, Minnesota 55402, for Acesse Corporation, ADXNET, Inc., ADX Labs, LLC, A2Z Holdings, Inc., MobileSoft Technology, Inc., Steven M. Renner, Joseph Morris, and Mobile.net LLC.

## INTRODUCTION

Defendant and Third-Party Plaintiff Veritec, Inc. seeks to remand this action to state court. The removing parties, eight of the nine Third-Party Defendants, oppose remand, arguing the action was properly removed under the doctrine of complete preemption (i.e., that Veritec's claims are completely preempted by the Patent and Copyright Acts). Alternatively, they contend their declaratory judgment counterclaims create a removable federal question, which makes removal of the entire action appropriate. These arguments present novel questions of law not previously answered by any court within the Eighth Circuit and implicate fundamental questions regarding the nature and scope of federal jurisdiction. Because the "complete preemption" doctrine expands federal court jurisdiction in derogation of the well-pleaded complaint rule, this court declines to apply it here. Moreover, although the declaratory judgment counterclaims must be litigated in federal court, their assertion does not support removal of the entire action. Accordingly, this Court recommends that the declaratory judgment be severed from this action and that the remainder of the action be remanded to state court.

**FINDINGS OF FACT**

This action began in state court as a two-count complaint by David and Denise Badhwa against Veritec, Inc., alleging breach of a promissory note and unjust enrichment. Notice of Removal Ex. A (Amended Complaint), Docket No. 1-1. Along with an answer and affirmative defenses, Veritec brought thirteen claims against the Badhwas and the nine parties it added through a third-party complaint. *Id.* at Ex. A (Veritec, Inc.'s Verified Answer, Countercl., and Third-Party Compl. 5-38).[1]

Veritec alleges that Badhwa, who is president of JAB Companies, entered into a licensing agreement with Veritec to develop and distribute new products in foreign markets. This arrangement included a confidentiality agreement. *Id.* (Countercl. and Third-Party Compl. 12-13). At roughly the same time, Veritec was negotiating with Steven Renner, Joseph Morris, and their associated entities regarding business opportunities related to the products Badhwa was helping develop. *Id.* (19-20). When these discussions broke down, Badhwa allegedly circumvented his agreement with Veritec and began using information he learned while working with Veritec to develop competing products for Renner. *Id.* (19-21).

Veritec brought counterclaims and third-party claims against the Badhwas and JAB Companies for breach of the confidentiality agreement, breach of fiduciary duties, usurpation of a business opportunity, misappropriation of trade secrets, conversion, and unjust enrichment. Veritec also brought third-party claims against Renner, Morris, and their business entities for tortious interference with contract, misappropriation of trade

---

[1]     The Notice of Removal includes several separately paginated documents, making citation to the individual document the most practicable method.

secrets, aiding and abetting the Badhwas' actions, and unjust enrichment. In pleading its counterclaims and third-party claims, Veritec referred to several of its patents and copyrights and alleged on "information and belief, discovery may reveal that one of more Counter-Defendants or Third-Party Defendants are infringing upon Veritec's patent rights [or its] copyright in its source code." *Id.* (11-12)

In response to the third-party complaint, the Renner- and Morris-affiliated Third-Party Defendants filed nine declaratory judgment counterclaims against Veritec, seeking a declaration of non-infringement of Veritec's patents and copyrights. Shortly after filing their answer and counterclaims, these Third-Party Defendants removed the case to federal court. This Court ordered briefing on the issue of its jurisdiction over the matter.

Meanwhile, Veritec filed an amended counterclaim and third-party complaint, removing any direct reference to its copyrights and patents, but maintaining the original thirteen claims alleged in the original pleading it filed in state court.

Veritec moved to remand the matter. The Court referred the motion to the undersigned for a report and recommendation.

## CONCLUSIONS OF LAW

The removing parties offer two theories justifying this Court's exercise of jurisdiction over the removed action, neither of which has been addressed in this Circuit. First, they argue that at least one of the claims in Veritec's third-party complaint is "completely preempted" by the Copyright or Patent Act, so as to render the entire action removable. Second, the removing parties contend that, because their declaratory judgment counterclaim to Veritec's third-party complaint arises under federal law, the

entire case may properly be removed to federal court. Neither argument is ultimately persuasive.

## I.    <u>Legal Standard</u>

Generally, defendants to a civil action in state court may remove it to federal court if the action could have originally been brought there. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing subject matter jurisdiction. *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). When invoking the district court's federal-question jurisdiction, removal generally requires that a *defendant* remove the matter based upon a federal question that appears in the *plaintiff's complaint. Id.*; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (discussing the "well-pleaded complaint" rule). However, any party may remove an action to federal court when "any party asserts a claim for relief arising under any Act of Congress relating to patents . . . or copyrights." 28 U.S.C. 1454(a)-(b). Thus, under 28 U.S.C. § 1454, a third-party defendant may remove an action to federal court based upon its own declaratory judgment action, if that action arises under the patent or copyright laws.[2]

A federal court considering a motion to remand must remember that it is a "court[] of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). Thus, courts must read removal statutes narrowly and should "resolve all doubts about federal jurisdiction in favor of remand." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007)

---

[2]    However, whether the entire action remains in federal court is another matter as the statute also permits this Court to remand any or all claims within its supplemental jurisdiction.  28 U.S.C. § 1454(d)(2).

(quoting *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)).

## II.    Removal Based Upon Veritec's Third-Party Complaint

Because the Badhwas did not join the Third-Party Defendants' removal of this action, removal is based entirely upon Veritec's third-party complaint and the removing parties' counterclaim for declaratory judgment. In its August 6, 2018 Order, this Court expressed skepticism about its ability to exercise jurisdiction over a case removed through a third-party complaint, even if a federal question was clearly pleaded. Based upon this Circuit's interpretation of the federal-question removal statute, 28 U.S.C. § 1441, such removal would not be allowed because it is "too much akin to the tail wagging the dog." *Lewis v. Windsor Door Co.*, 926 F.2d 729, 733 (8th Cir. 1991). Further analysis has not changed the Court's view regarding § 1441.

But recent statutory changes allow for removal even when based upon a third-party complaint (or a counterclaim thereto) if that pleading arises under federal patent and copyright law. In 2011, Congress expanded the scope of removal in actions "in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1454(a). Such actions "may be removed by any party." *Id.* at § 1454(b). Congress intended this new rule to "fix" the Supreme Court's decision in *Holmes Group., Inc. v. Vornado Air Circulation Systems., Inc.*, 535 U.S. 826 (2002), which held that a defendant's Copyright Act counterclaims, even though compulsory, did not create federal-question jurisdiction. Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 539 (2012).

The plain language of § 1454 allows *any* party to remove an action in which *any* party seeks relief under the Copyright Act or Patent Act. This would logically include third-party claims and counterclaims to those claims. Similarly, the provision allows a party to remove an action based upon its own patent or copyright claims. Although no court in this Circuit has yet interpreted this unique removal provision, at least one other district has held that a third-party claim may be removed under § 1454. *See TransCardiac Therapeutics, Inc. v. Yoganathan*, 85 F. Supp. 3d 1351 (N.D. Ga. 2014) (retaining jurisdiction over third-party declaratory judgment claim to settle inventorship, but remanding all other claims and counterclaims). Thus, in this case the mechanism for removal (a third-party complaint) does not itself render the removal improper.

The question becomes whether any of the claims relied upon by the removing parties actually "arise under" federal patent or copyright law. The removing parties argue that (1) four of Veritec's claims in its third-party complaint arise under patent or copyright law, making removal based on the third-party complaint proper under the complete preemption doctrine, and (2) their declaratory judgment counterclaims to the third-party complaint directly arise under patent and copyright law, so as to support removal of the entire action in any event. The Court examines each of these arguments in turn.

## III.    Veritec's Third-Party Complaint

The removing parties first argue that at least one of the state law claims against them in Veritec's third-party complaint actually arises under patent or copyright law and the complete preemption doctrine allows removal of such a claim. No precedent binding on this Court has accepted this argument and this Court does not do so here. The complete preemption doctrine creates an "exception" to the well-pleaded complaint rule,

but courts have struggled to apply it coherently and should be circumspect about extending its application.

### A.    Application of The Well-Pleaded Complaint Rule

Removal based upon federal-question jurisdiction is generally governed by the well-pleaded complaint rule, which examines the facial allegations of the complaint to determine whether it "affirmatively allege[s] a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). In the context of patent and copyright claims, § 1454 seemingly abrogates the "complaint" portion of the well-pleaded complaint rule. But, to the extent the rule embodies principles of federalism and makes the "claimant" (if not the plaintiff) "master of the claim," *see Caterpillar, Inc.*, 482 U.S. at 392, the "well-pleaded" requirement remains. Thus, where as here, removal is ostensibly based upon a third-party complaint under 28 U.S.C. § 1454, this Court will apply the well-pleaded complaint rule to the third-party complaint to determine whether it pleads claims arising under federal law.

The removing parties concede that no federal claim appears on the face of Veritec's third-party complaint. Instead, they stake a position novel in this Circuit: that the doctrine of complete preemption applies to the Patent and Copyright Acts. Complete preemption is an "independent corollary to the well-pleaded complaint rule." *Id.* at 393 (internal citation omitted). Although a plaintiff may usually "avoid federal jurisdiction by exclusive reliance on state law," *id.* at 392, the Supreme Court has recognized that a federal law may completely preempt any potential state law claim such that "a suit is purely a creature of federal law," even if state law would otherwise provide relief. *Anderson*, 539 U.S. at 7.

The removing parties argue that four of Veritec's state law claims—tortious interference with contract, aiding and abetting, conspiracy, and unjust enrichment—are completely preempted by federal patent and copyright law, and may serve as the basis for federal-question removal.[3] Although several other circuits have extended the supposedly narrow complete preemption doctrine to the Copyright Act,[4] neither the Supreme Court nor the Eighth Circuit has done so. Mindful of the values of federalism and comity, and without binding precedent to the contrary, this Court declines to expand its jurisdiction in the manner urged by the removing parties. To fully understand the Court's decision in this regard it is first necessary to review the history and development of the complete preemption doctrine.

### B.    Overview of the Complete Preemption Doctrine

The Supreme Court first articulated the complete preemption doctrine fifty years ago in *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557 (1968). There, the Court held in a brief opinion that, because § 301 of the Labor Management Relations Act would control any claim for breach of contract between an employer and a

---

[3]    To add further complication, some of the cases cited by the removing parties are, in fact, not preemption cases at all, but instead involve the "distinct but related pocket" of jurisdictional analysis that allows removal where a state law claim, although clearly not federal in nature, would require "the resolution of a 'substantial question of federal law.'" Gil Seinfeld, *The Puzzle of Complete Preemption*, 155 U. Pa. L. Rev. 537, 560 (2007); *see also Gunn*, 568 U.S. at 258 (noting that appellee's malpractice claim was "indisputably" based upon state law before turning to whether the claim nonetheless raised a substantial federal issue that would need to be resolved). To the extent that a "substantial federal question" argument is also raised, the Court addresses it separately.

[4]    No circuit court, it seems, has applied the doctrine of complete preemption to any part of the Patent Act. The Federal Circuit has on occasion applied the "substantial federal question" doctrine to it. *See Forrester Envtl. Serv., Inc. v. Wheelabrator Tech., Inc.*, 715 F.3d 1329, 1333 (Fed. Cir. 2013) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)).

labor union, the case arose under the laws of the United States and was properly removed from state court. *Id.* at 560-62. As more than one commentator has noted, the Court provided no rationale for this conclusion and failed to mention the well-pleaded complaint rule entirely. *See, e.g.*, Margaret Tarkington, *Rejecting the Touchstone: Complete Preemption and Congressional Intent After Beneficial National Bank v. Anderson*, 59 S.C. L. Rev. 225, 237-38 (2008). In a later opinion also involving the LMRA, the Court provided a name for the doctrine, stating that, "*Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. of S. Cal.*, 463 U.S. 1, 23-24 (1983). But, again, the Court provided no guidance as to when a claim would be subject to "complete preemption" such that it was properly removed to federal court and when the claim would merely be subject to the well-recognized defense of preemption such that the state court action would be dismissed but not removable.

Since deciding *Avco* in 1968, the Supreme Court has applied the complete preemption doctrine in only two other federal statutory contexts. In 1987, the Court held that the civil enforcement provisions of § 502(a) of the Employee Retirement Income Security Act of 1974 completely preempted certain state law claims, making them removable to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-67 (1987). In so concluding, the Court emphasized that Congress had adopted jurisdictional language for ERISA, drafted after *Avco*, that closely mirrored that of the LMRA, and that the legislative history showed it was intended to have the same effect. *Id.* at 65-66. This also

meant, of course, that the Court need not discuss the rationale of *Avco* itself. *Id.* at 66 ("No more specific reference to the *Avco* rule can be expected  . . . .").

Most recently, the Supreme Court extended the complete preemption doctrine to § 30 of the National Bank Act, holding that the NBA's remedies for a borrower who is charged unlawful interest rates completely preempt any state law usury claim against a National Bank. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003). Because the NBA was enacted in 1864, long before *Avco* and 11 years before federal-question removal existed, *id.* at 9 n.5, the Court rearticulated the test for complete preemption as whether "Congress intended [the federal cause of action] to provide the exclusive cause of action" *in the given context. Id.* at 9. Applying this test, the majority, citing its prior cases interpreting the NBA, concluded that the relevant provisions "cover[ed] the entire subject" and that "the power to supplement [them] by State legislation" was "conferred neither expressly nor by implication." *Id.* at 10 (internal quotations omitted). Thus, the majority reasoned, "there is, in short, no such thing as a state-law claim of usury against a national bank."[5]

Justice Scalia, joined by Justice Thomas, authored a dissent in *Anderson* that was critical, not just of the majority's decision, but of the complete preemption doctrine itself. The test announced by the majority had no basis in the Court's prior complete preemption cases, which themselves had misapplied precedent. *Id.* at 13-17 (Scalia, J., dissenting) (describing the *Avco* holding as "jurisdictional alchemy"). More fundamentally, accepting

---

[5]     To add to the analytical muddle in this area, the language often used to describe the doctrine of complete preemption mirrors language used to describe the Constitutional concept of field preemption, which is a defense to a state court action, but not itself a ground for removal. The Seventh Circuit has also noted these parallels. *Wisc. Interscholastic Athletic Ass'n v. Gannett Co., Inc.*, 658 F.3d 614, 620 (7th Cir. 2011).

complete preemption requires ignoring at least one of the following principles, neither of which the majority claimed to be overruling: (1) that the plaintiff is the master of the complaint and can choose to avoid federal jurisdiction even if it has a valid federal claim; and (2) that a federal preemption defense does not support removal premised on federal-question jurisdiction, even when a state court would have to dismiss the complaint. *Id.* at 17-19. Finally, the dissent stressed, the doctrine of complete preemption disrespects the "autonomy and authority of state courts" without providing a sufficient explanation as to why state courts may be trusted to recognize defensive preemption in most cases, but not in the "extraordinary" cases of complete preemption. *Id.* at 18, 20-21. Because this Court finds the dissent's logic persuasive, it is reluctant to expand the reach of complete preemption removal absent a compelling reason to do so. No such reason is presented in this case.

Moreover, since *Anderson*, the Eighth Circuit has reiterated its view that complete preemption is "quite rare," holding that "removal under the complete preemption doctrine is proper only in circumstances where a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action for the type of claim asserted." *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248, 250 (8th Cir. 2012) (internal quotation omitted). Courts should be reluctant to conclude that a statute has the "extraordinary pre-emptive power" necessary for complete preemption removal because "overly aggressive application of the complete preemption doctrine would swallow up the well-pleaded complaint rule in its entirety." *Id.* at 247.

### C.    The Copyright Act and Complete Preemption[6]

Although neither the Supreme Court nor the Eighth Circuit has done so, several circuit courts of appeal have addressed the application of complete preemption to the Copyright Act. If one hoped some clarity could be gleaned from these other courts' analyses, that hope is misplaced. This lack of clarity also cautions against extension of the doctrine.

### 1.    Circuits Rejecting or Questioning Complete Preemption Under the Copyright Act.

Several circuits have either rejected or expressed skepticism of the application of the complete preemption doctrine to the Copyright Act. The Third and Tenth Circuits have found the Copyright Act inapplicable to the cases in which a party has argued for complete preemption. *See Bd. of Chosen Freeholders of Burlington v. Tombs*, 215 F. App'x 80, 82 (3d Cir. 2006) (finding that copyright law did not "wholly displace" state law rights to public records); *Okla. Nat. Gas Co. v. LaRue*, 156 F.3d 1244 (Table) (10th Cir. 1998) ("Because Mr. LaRue's claims stand or fall independently of whether he is the copyright owner, we believe this preemption argument merits no discussion."). The Seventh Circuit, without affirmatively deciding the question, stated that it was "not so certain" that the Copyright Act completely preempted any state law claim. *Wis. Interscholastic Athletic Ass'n*, 658 F.3d at 620 (citing sources articulating the "narrowness" and "rarity" of complete preemption). The Eleventh Circuit has entertained the argument in several cases, but then decided each matter on narrower grounds. *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 864-66 (11th Cir. 2008); *Dunlaw v. G&L Holding*

---

[6]    As previously noted, the Court is aware of no decision applying the complete preemption doctrine to the Patent Act.

*Grp., Inc.*, 381 F.3d 1285, 1289-91 (11th Cir. 2004); *Foley v. Luster*, 249 F.3d 1281, 1287-88 (11th Cir. 2001).

**2.    Circuits Applying Complete Preemption to the Copyright Act**

In contrast, four circuits have held that the Copyright Act completely preempts state law causes of action in some instances, but this Court finds the reasoning of these decisions unpersuasive. The Fourth Circuit was the first to enter the water. In *Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225 (4th Cir. 1993), the Fourth Circuit held a state law claim completely preempted by the Copyright Act. Decided before *Anderson*, the court in *Rosciszewski* discussed § 301(a) of the Copyright Act and its preemptive effect on equivalent state causes of action as part of a broader analysis of Congressional intent to facilitate removal. *Id.* at 232-33. It also discussed the grant of exclusive jurisdiction to the federal district courts for claims arising under the Copyright Act. *Id.* at 232 (citing 28 U.S.C. § 1338). *Anderson*, however, renders much of this analysis irrelevant. *See Anderson*, 539 U.S. 9 n.5 (stating that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action to be removable").

But even on its own terms *Rosciszewski*'s analysis is unpersuasive. The Fourth Circuit acknowledged in a footnote that, at the time the relevant provisions of the Copyright Act were passed, the derivative jurisdiction rule prevented removal of claims, even those within the exclusive jurisdiction of the federal courts. *Rosciszewski*, 1 F.3d at 232 n.6. It seems a bizarre result to conclude, as that court did, that Congress intended these state law claims be removable because they arose under the Copyright Act, when no such removal was possible at the time Congress enacted the Copyright Act.

Three other circuits, all since *Anderson*, have joined the Fourth Circuit and held that federal copyright law completely preempts certain state law claims. The Fifth and Sixth Circuits adopted the reasoning of the Fourth Circuit without much discussion, notably failing to address *Anderson*'s effect on the complete preemption doctrine analysis. *See GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 705-06 (5th Cir. 2012); *Ritchie v. Williams*, 395 F.3d 283, 285-87 (6th Cir. 2005). The Second Circuit at least recognized the shift in precedent. It noted that, before *Anderson*, it "would have hesitated to extend the complete preemption doctrine into the copyright field," but concluded that *Anderson* means the Supreme Court now intends "to extend the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive cause of action." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304 (2d Cir. 2004).

The logical extension of the Second Circuit's reasoning is that, with few exceptions, what was once an affirmative defense to a state law claim would now become a basis for removal of an entire action in which such a claim is pleaded. It is not an absurd conclusion. But therein lies the very problem identified by Justice Scalia in *Anderson*—that, ultimately, acceptance of the complete preemption doctrine requires the abrogation of the well-pleaded complaint rule. And yet, not even the *Anderson* majority purported to abrogate the well-pleaded complaint rule. The Second Circuit's decision is simply not reliable.

### D.    This Court's Analysis of Complete Preemption and Copyright

Unpersuaded by the courts that have done so, this Court declines to extend the complete preemption doctrine to either federal copyright or patent law. Justice Scalia's *Anderson* dissent and Eighth Circuit precedent offer powerful reasons to take a

circumspect approach to the doctrine. Viewed through this lens, the Copyright and Patent Acts do not possess the "extraordinary" preemptive effect required to make a claim pleaded exclusively in state law terms removable to federal court.

Fundamentally, federal courts possess limited jurisdiction and are discouraged from expanding those limits set by the Constitution and Congress. *Gunn*, 568 U.S. at 256. Our federal system, which gives "[d]ue regard for the rightful independence of state governments," *Healy v. Ratta*, 292 U.S. 263, 270 (1934), compels respect for such limitations. So, too, does our system of coordinate branches, as the Supreme Court has recognized that Congress possess the power to create inferior courts and thus may vest them "with jurisdiction either limited, concurrent, or exclusive." *Ankenbrandt v. Richards*, 504 U.S. 689, 698 (1992) (citing *Cary v. Curtis*, 44 U.S. 236, 245 (1845)). Although the complete preemption doctrine creates an exception—which the Supreme Court has called a corollary—to the well-pleaded complaint rule, courts must still consider these limitations as they apply that exception. The alternative would allow the exception to swallow the rule. *MFA Petroleum Co.*, 701 F.2d at 247.

Further, the shifting rationale for the doctrine makes applying it with any confidence difficult. As the *Anderson* dissent and other commentators have noted, the most recent articulation of the doctrine provided in *Anderson* finds little support in the cases it cites. 539 U.S. at 16 (Scalia, J., dissenting) ("Had it thought that today's decision was the law, the *Taylor* Court . . . need not have pored over the legislative history of § 502(a) to show that Congress expected ERISA to be treated like the LMRA."); *see also* Tarkington, *supra*, at 242-44 (contrasting the congressional intent analysis in *Anderson* with that in *Taylor*).

The upshot of this lack of clarity is, again, that lower courts should proceed cautiously in expanding the doctrine to new substantive fields.

With this caution in mind, the Copyright and Patent Acts lack the extraordinary characteristics necessary to completely preempt a cause of action that a party has chosen to plead solely as a state law claim. In this Circuit, "removal under the complete preemption doctrine is proper only in circumstances where a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action for the type of claim asserted." *MFA Petroleum Co.*, 701 F.3d at 250 (internal quotation omitted). It is unclear that the Copyright and Patent Acts completely displace state law claims that relate in any way to patents or copyright.

To be sure, Congress has been uncharacteristically clear that it wants copyright and patent claims litigated exclusively in federal court, as expressed by 28 U.S.C. § 1338(a). But § 1338(a), standing alone, does not allow a federal court to hear a case removed on a facially valid state law claim. It does not create a federal remedy or even demonstrate Congress's intent to make such actions removable. *Cf. Anderson*, 539 U.S. at 11. Rather, § 1338(a) simply denies the state courts concurrent jurisdiction over copyright and patent claims. Nothing more, nothing less.

Because § 1338 alone is not enough to make a state law claim removable, there must be an additional provision in the patent and copyright statutes justifying complete preemption. As to the Patent Act, the removing parties offer nothing. This is not surprising, as it appears that no federal court has found the Patent Act to completely preempt any state law claim that might relate to a patent. One can easily envision a state law cause

of action that, based on its facts, "relates to" a patent but does not raise a question of federal law.[7]

As to the Copyright Act, the removing parties appear to hang their hat on the same provision as those circuits that have found complete preemption applicable in this area: 17 U.S.C. § 301.[8] The relevant parts of the statute state:

> (a) . . . [A]ll legal or equitable rights that **are equivalent to** any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright . . . are governed exclusively by [Title 17]." Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
>
> **(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."**

17 U.S.C. § 301(a) (emphasis supplied). Thus, § 301(a) is not nearly as panoptic as those statutes which the Supreme Court has previously found completely preemptive. It states that all non-equivalent state law rights are left untouched, 17 U.S.C. § 301(b), suggesting that Congress intended a claim for copyright infringement to be the "exclusive" cause of

---

[7] The case the removing parties purport found an unjust enrichment claim completely preempted applied the substantial federal question doctrine. *See MPEG LA, LLC v. Toshiba Am. Information Sys., Inc.*, 2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015). To the extent the removing parties intended to raise a "substantial federal question" argument regarding the unjust enrichment claim, that argument is discussed briefly below. But there is no reason to find that federal patent law completely preempts any state law claims, including one for unjust enrichment.

[8] 17 U.S.C. §§ 501-513 create the elements and remedies for a copyright infringement claim. The Second Circuit held these provisions sufficient, because it views the *Anderson* holding as extending the complete preemption doctrine "to any federal statute that both preempts state law and substitutes a federal remedy for that law," *Briarpatch Ltd.*, 373 F.3d at 305. In this Circuit, however, Congressional intent remains "the ultimate touchtone guiding preemption analysis." *MFA Petroleum Co.*, 701 F.3d at 248.

action in only the narrowest sense. *Cambridge Literary Prop. Ltd. V. W. Gobel Porzellanfabrik G.m.b.H & Co. KG.*, 510 F.3d 77, 100 (1st Cir. 2007) (Cyr, J., dissenting). This language creates "ordinary" preemption, whereby a court—state or federal—must dismiss a state law claim that is preempted by federal law. *See Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 220-21 (1985). This was precisely the holding in many of the cases cited by the removing parties. *See, e.g.*, *Nat'l Car Rental Sys., Inc. v. Computer Assoc. Intern, Inc.*, 991 F.2d 426 (8th Cir. 1993). But ordinary preemption is not complete preemption.

Other courts have viewed such statutory language "preserving state authority" except when in direct conflict with the federal law as evidence that Congress did not intend to create the sole cause of action in a field. *See, e.g.*, *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'n, Inc.*, 182 F.3d 851, 857-58 (11th Cir. 1999) (declining to apply complete preemption to the Cable Communications Policy Act of 1984). That is a reasonable inference here, as the language of the Copyright Act clearly envisions state law claims filling the gaps where the misuse of a copyrighted work is not within one of the exclusive rights that would be an infringement. *Cf. Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 154-55 ("The Copyright Act does not give a copyright holder control over all uses of his copyrighted work.").

By contrast, each of the statutes the Supreme Court has identified as completely preempting state law claims is explicit in its dominance over the relevant field.[9]  ERISA

---

[9]     As the Supreme Court has recognized, Congress may make its dominance in the field even clearer, as it did with the Price-Anderson Act, which explicitly allows for removal of state law claims "asserting public liability" resulting from a nuclear incident. *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999). Such statutory language only

provides that it "shall supersede *any and all* state laws" that "*relate to any* employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added); *see MFA Petroleum*, 701 F.3d at 248 (citing § 1144 as a "good example" of express preemption). And the LMRA encompasses all "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185. In finding that the National Bank Act completely preempted a state usury claim, the Supreme Court recited passages from its prior cases, stating that §§ 85 and 86 "cover the entire subject" and that "the power to supplement" those provisions was "conferred neither expressly nor by implication." *Anderson*, 539 U.S. at 10 (quoting *Farmers' and Mechanics' Nat'l Bank v. Dearing*, 91 U.S. 29, 35 (1875)).

A unifying thread of these statutes is that the preemptive force is "so strong that 'there is . . . no such thing as a state-law claim.'" *MFA Petroleum*, 701 F.3d at 248 (quoting *Anderson*, 539 U.S. at 11). That is, there can be no state law contract *claim* between an employer and a labor organization, there can be no state law *claim* relating to an employee benefit plan, and there can be no state law usury *claim* against a nationally chartered bank. At its core, the doctrine of complete preemption "maintains that 'the plaintiff has simply brought a mislabeled federal claim'" because the matter at issue is entirely federal. *Id.* at 247 (quoting *King v. Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). The Copyright Act does not fit into that mold. The Act does not preempt, even defensively, a claim simply because copyrighted material is at issue; the claim is only preempted if it is within that narrow category of exclusive rights guaranteed to the copyright holder. Courts determining whether the Act preempts a state law claim must do

---

reinforces the need for caution in applying complete preemption when the language is absent.

so on the particular facts pleaded. It is no surprise that the lower courts in those circuits applying complete preemption to copyright have developed a hornet's nest of conflicting decisions on the same state law claims. *See* 5 William F. Patry, *Patry on Copyright* § 17:23 (2018). The preemptive nature of the Copyright Act is simply of a different kind than those other statutes, which broadly occupy the field.

Finally, failing to apply complete preemption to the Copyright Act will not undermine Congress's goal of ensuring a national and uniform system of copyright laws. A copyright or patent claim that appears on the face of a complaint remains readily removable. 28 U.S.C. § 1338. To the extent that a state law claim is an attempt to artfully plead an infringement claim, a state can—indeed, must—dismiss it for failing to state a claim, thereby alleviating any need for the state court to interpret copyright law and ensuring that parties genuinely interested in pursuing their claim ultimately end up in federal court. *See MFA Petroleum*, 701 F.3d at 253 (noting that remand based on a lack of complete preemption does not speak to the merits of defensive preemption).

Because neither the Copyright Act nor Patent Act exhibit the extraordinary preemptive power that is prerequisite for complete preemption, this Court need not examine the individual claims identified by the removing parties to determine whether they are preempted. They simply cannot serve as a basis for removal.

### E. Unjust Enrichment and a Substantial Federal Question

Although referring to it as preemption, the removing parties also apparently argue that Veritec's unjust enrichment claim raises a "substantial federal question" justifying removal. The substantial federal question doctrine creates another "slim category" of exceptions to the well-pleaded complaint rule. *Gunn*, 568 U.S. at 258. In short, a federal

court may exercise jurisdiction over a state law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* All four of these requirements must be met. *Id.* The removing parties contend that, to find that the Third-Party Defendants have been unjustly enriched at Veritec's expense, a court must necessarily conclude that they infringed Veritec's patents or copyrights. But this argument misunderstands both the "necessarily raised" and "substantial" requirements of the doctrine.

Veritec's unjust enrichment claim does not necessarily raise a patent or copyright issue. The Supreme Court has explained that the well-pleaded complaint rule "focuses on claims, not theories, and just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire . . . claim 'arises under' patent law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811 (1988) (internal citation omitted). The unjust enrichment claim is generally pleaded, incorporating by reference all prior paragraphs and applying to all Defendants; it is clear from the face of the Complaint that Veritec could possibly pursue the claim on multiple theories. True, Veritec's original Third-Party Complaint references patents and copyrights; but it also references, among other things, tortious interference with contracts, breach of fiduciary duties, and misappropriation of trade secrets. Without exploring the viability of any such theory at this jurisdictional stage, it is possible to imagine any number of these falling short of creating a sufficient legal remedy, but ultimately serving as the basis for unjust enrichment. *See Toomey v. Dahl*, 63 F. Supp. 3d 982, 999-1000 (D. Minn. 2014) (discussing the elements of a Minnesota unjust enrichment claim); *see also Motley v.*

*Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (noting that plaintiffs "may plead their unjust-enrichment claim in the alternative . . . without fear of dismissal"). This is distinguishable from the case cited by the removing parties, which involved unauthorized use of a patent pool license, and thus left patent infringement as the only viable theory for the plaintiff's claim. *See MPEG LA*, 2015 WL 6685523, at *3.

Even if a question of patent or copyright law were necessarily raised, it would not be a substantial one in the relevant sense. The substantiality inquiry here is "the importance of the issue to the federal system as a whole."[10] *Gunn*, 568 U.S. at 260. To be substantial, the federal question must be "a nearly pure issue of law" that could govern many future claims, and not one that is "fact-bound and situation-specific." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006). The unjust enrichment claim fails this inquiry because, even if it required making an infringement determination, the determination would be nothing more than the state court applying settled federal law to the facts at hand. And any preclusive effects of the determination "would be limited to the parties and patents [or copyrights] that had been before the state court." *Gunn*, 568 U.S. at 1067-68. Because any question of federal law encompassed by the unjust enrichment claim is neither necessarily raised nor substantial, it cannot be removed to federal court.

---

[10] The case cited by the removing parties that found a substantial federal question in an unjust enrichment claim did so by misreading *Gunn*. *See MPEGA LA*, 2015 WL 6685523, at *4 (concluding that the patent law question was substantial because "it is the gravamen of MPEG's unjust enrichment claim").

## IV. **Declaratory Judgment Counterclaims**

The removing parties raise one additional argument in opposition to the motion to remand: that their declaratory judgment counterclaims to the Third-Party Complaint are removable under 28 U.S.C. § 1454 and all the other claims are then subject to supplemental jurisdiction. As previously discussed, the pleading party may remove its own declaratory judgment counterclaim for patent or copyright infringement under the uniquely powerful § 1454—assuming there is an actual case or controversy. But in this case, the provision may not perform the Herculean task of keeping all other claims in federal court, as those 15 claims predominate over the narrower patent and copyright declaratory judgment claims.

### A. **Jurisdiction Over the Declaratory Judgment Counterclaims**

Removal based upon the declaratory judgment counterclaims invokes two jurisdictional questions.[11] First, since § 1454 applies only to those claims "arising under any Act of Congress relating to patents . . . or copyrights," do the declaratory judgment counterclaims arise under patent or copyright law? They do. To determine declaratory judgment jurisdiction, a court may "look to the 'character of the threatened action.'" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). Here, the

---

[11]     In its brief, Veritec states that the removing parties' counterclaims "were never filed in the state court." Veritec, Inc.'s Resp. to Aug. 6, 2018 Order, Docket No. 23. If true, this would raise additional complications as to whether jurisdiction existed at the time of removal. But it is not true. The record establishes that the counterclaims were filed in a state court. *See* Littman Decl. Ex. B (Acesse Corp. et al.'s State Court Answer and Counterclaim 15-22), Docket No. 6. That noted, the removing parties pleaded the counterclaims as though already under federal jurisdiction, an issue addressed below.

"coercive action" the removing parties are attempting to forestall is one for patent and copyright infringement, which "necessarily presents a federal question" because federal law creates the cause of action. *Id.* Contrary to Veritec's assertion, the fact that the removing parties brought the counterclaims as part of their Answer to the Third-Party Complaint is irrelevant to this conclusion; one may bring any counterclaim against an opposing party. Fed. R. Civ. P. 13(b).

The second jurisdictional question is whether there is sufficient actual controversy regarding the patents and copyrights such that this Court may even hear the declaratory judgment action. Again, the answer is yes, but it is a close call. The Declaratory Judgment Act echoes Article III's limitation on a federal court's jurisdiction by requiring "an actual controversy." 28 U.S.C. § 2201(a); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). What makes a dispute an actual controversy is difficult to define as a bright line rule. The Supreme Court has stated that the question is basically "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy, and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

To be sure, the facts underlying these declaratory judgment counterclaims do not make a textbook case. The removing parties rely solely upon the allegations in Veritec's Third-Party Complaint; there is no cease-and-desist letter, claim chart, or other communication between the parties directly threatening or implying a threat of suit for infringement. Nor are the allegations in the Third-Party Complaint themselves definitive.

Veritec asserts that "discovery *may* reveal" infringement, Littman Decl. Ex. B (Veritec's Answer, Affirmative Def., Countercl., and Third-Party Compl. ¶¶ 45-46), Docket No. 6, and does not directly threaten a future lawsuit. Although Veritec alleges that Badhwa, while working for Renner, "utilized Veritec's patented, trade secret, and copyrighted source code" in developing competing products, such "utilization" is not necessarily infringement. *See, e.g.*, *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1345 (Fed. Cir. 2010) (Clevenger, J., dissenting in part) (discussing "workarounds" of patents).

Those issues noted, the "factual and legal dimensions of the dispute" are sufficiently defined to make it fit for judicial resolution. *MedImmune*, 549 U.S. at 128. Veritec specifically lists its patents, names the competing products, and suggests that the products may infringe one or more of the referenced patents. Littman Decl. Ex. B (Veritec's Third-Party Compl. ¶¶ 45-46, 106, 109). Although this, standing alone, would be insufficient, *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378-79 (Fed. Cir. 2012), it does define the scope of the controversy. Other facts render the dispute sufficiently "concrete." Veritec notes as a factual matter that the possibly infringing products are currently available for sale and "generate significant revenue," Littman Decl. Ex. B (Veritec's Third-Party Compl. ¶¶ 107-08), which implies that the controversy has ripened into "one of sufficient immediacy and reality." *Avery Dennison*, 673 F.3d at 1381.  The Third-Party Complaint, though not raising patent and copyright claims on its face, alleges misappropriation of the technology and (perhaps needlessly) references the patents and copyrights. *See U.S. Water Serv., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 973-75 (8th Cir. 2015) (citing Federal Circuit opinions finding related litigation between the parties regarding the same technology as relevant to declaratory judgment jurisdiction). Such

allegations, placed in a publicly filed court document, broadcast to the removing parties' customers and business associates that an infringement lawsuit may well be "the next logical, if not inevitable, step." *Id.* at 976 (considering the declaratory judgment defendant's communications to other businesses, even when they "did not explicitly threaten patent litigation"). Finally, although not dispositive, Veritec's refusal to sign a covenant not to sue has done nothing to "lessen [the] existing controversy." *Avery Dennison*, 673 F.3d at 1381.

Because the declaratory judgment counterclaims "arise under" federal patent and copyright law and there is a sufficiently developed case or controversy, this Court may properly exercise jurisdiction over them.

### B.    Supplemental Jurisdiction

Given jurisdiction over the declaratory judgment counterclaims, the removing parties ask the Court to go one step further by exercising supplemental jurisdiction over all other claims in this action. This Court declines to do so. Exercising supplemental jurisdiction over the remaining claims, some of which are entirely unrelated, would be an inappropriate exercise of jurisdiction and is unnecessary to ensure that the patent and copyright claims are litigated in federal court.

For civil actions "removed solely under [28 U.S.C. § 1454]"—which this action would be—the district court may, for specified reasons, "remand any claims within the supplemental jurisdiction of the district court under section 1367." 28 U.S.C. § 1454. The supplemental jurisdiction provision, 28 U.S.C. § 1367, allows a court to exercise supplemental jurisdiction over state law claims that are sufficiently related to the federal claims "that they form part of the same case or controversy."  But a district court may

decline supplemental jurisdiction over a state law claim if, among other reasons, "the claim or claims substantially predominate over the claim of which the district court has original jurisdiction." *Id.* at § 1367(c). "When considering whether state law claims substantially predominate, the usual question is whether the state claims differ from the federal claims." *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1028 (D. Minn. 2007). Where they differ, "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," the state law claims should be left to the state court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966).[12]

This Court declines to exercise supplemental jurisdiction over the state law claims. Because both the federal and state claims apparently stem from the "same nucleus of operative facts," *Cossette v. Minn. Power & Light*, 188 F.3d 964, 973 (8th Cir. 1999), namely the breakdown in the business relationship and subsequent development of a competing product, the Court could exercise supplemental jurisdiction. Although they share this nucleus, the facts required to prove the declaratory judgment counterclaims vary significantly from those facts relevant to the state law claims: none of the state law claims require evidence of the validity or invalidity of a patent or copyright or whether specific conduct "infringes" upon one of the exclusive rights guaranteed by the Patent or Copyright Acts. *See TransCardiac Therapeutics*, 85 F. Supp. 3d at 1356-57 (concluding that "deciding inventorship of the [various] patents—a distinctly federal question—would be a mere appendage" to the many other state law claims, including those for breach of

---

[12] Because it codifies "the old pendent jurisdiction doctrine, courts applying § 1367 have continued to rely on *United Mine Workers*," the leading Supreme Court case on pendent jurisdiction. *James v. Sun Glass Hut of Calif., Inc.*, 799 F. Supp. 1083, 1084 (D. Colo. 1992). This District has followed that practice as well. *See Craig Lyle Ltd. Partnership v. Land O'Lakes, Inc.*, 877 F. Supp. 476, 484-85 (D. Minn. 1995).

contract, tortious interference, conspiracy, and breach of fiduciary duties). Inclusion of the state law claims in federal court would vastly expand the scope of discovery with little overlap with the truly federal claims. Even if some of the witnesses may overlap, the scope of the relevant issues and documents would very likely not.

The remedies available for the Badhwas' and Veritec's many state law claims are also different than those available to the removing parties for their declaratory judgment claims.[13] Success on any of the state law claims would entitle the claimant to damages. Veritec also seeks punitive damages for civil theft and an accounting, remedies directly related to one or more of its claims. Littman Decl. Ex. B (Veritec's Third-Party Complaint 38-39). By contrast, the removing parties may receive only declaratory relief. Another court in this District has declined supplemental jurisdiction when the state law claims would have entitled the plaintiff to a very different remedy than that available under the federal statute, even though all of the claims in that case were the plaintiff's. *See Craig Lyle Ltd.*, 877 F. Supp. at 485.

Policy considerations also support this Court's decision not to exercise supplemental jurisdiction over the many and varied state law claims at issue in this litigation. By passing the provisions now codified in § 1454, Congress ensured that a patent or copyright claim appearing elsewhere than in the plaintiff's complaint was removable to federal court without the need for the state court to dismiss. It does not

---

[13]     Although § 1367 and the caselaw interpreting it assume original jurisdiction based upon the plaintiff's complaint, it extends supplemental jurisdiction to claims not brought by plaintiff. 28 U.S.C. § 1367(a). By analogy it is thus reasonable to consider the difference in remedies of an action removed based upon a counterclaim under § 1454, as a court could do substantially the same thing when considering supplemental jurisdiction over a counterclaim.

follow, however, that Congress sought to allow parties to opportunistically use such claims to overcome the otherwise still applicable edict that the plaintiff is master of the complaint. In this regard, courts should approach supplemental jurisdiction based upon § 1454 with heightened suspicion.

Courts already apply a similar practice to the Declaratory Judgment Act, also implicated here, ensuring that it is not "used either for tactical advantage by litigants or to open a new portal of entry to federal courts for suits that are essentially defensive or reactive to state actions." *Int'l Assoc. of Entrepreneurs of America v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995). That the removing parties filed their Answer and Counterclaims on the same day they filed their Notice of Removal leaves the Court to wonder whether the declaratory judgment counterclaims in the present action were used precisely to gain an inappropriate tactical advantage. *Compare* Littman Decl. Ex. B (Notice of Removal 9) *with id.* (Answer to Third-Party Compl. 24). This concern only strengthens the conclusion that the Court should not exercise supplemental jurisdiction over the various state law claims. The tail should not wag the dog.

## CONCLUSION

Neither the Copyright Act nor Patent Act completely preempts any of Veritec's state law claims. The removing parties properly removed their own declaratory judgment counterclaims to federal court, but this Court declines to exercise supplemental jurisdiction over the other claims, which predominate over the federal claims. Accordingly, the Court shall retain jurisdiction over the declaratory judgment counterclaims, but remands all other claims to Hennepin County District Court.

## RECOMMENDATION

Based upon the foregoing, the Court hereby RECOMMENDS THAT:

1.     Defendant and Third-Party Plaintiff Veritec, Inc.'s Motion to Remand [Docket No.

11] be GRANTED IN PART AND DENIED IN PART.

2.     The Court retain jurisdiction over those counterclaims to Veritec, Inc.'s Third-

Party Complaint that seek declaratory relief, and that all other claims be remanded to

state court.


Dated: November 21, 2018

                                        s/David T. Schultz
                                        DAVID T. SCHULTZ
                                        United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).